h COOKS, Judge.

FACTS AND PROCEDURAL HISTORY

On November 28, 1996, Roland Perrin drove his mother’s car from Lafayette to Lee’s Tavern in Erath. Before reaching Lee’s Tavern, Perrin rear-ended a vehicle in Abbeville. Perrin fled the scene of this accident and arrived at Lee’s Tavern at approximately 11:00 a.m., where he consumed between twelve and sixteen beers.
Perrin left Lee’s Tavern after approximately three hours, returning to Abbeville where officers from the Abbeville Police Department stopped him in connection with the earlier hit-and-run accident. The officers conducted a field sobriety test and arrested Perrin for violating La.R.S. 14:98, operating a vehicle while intoxicated (DWI), and transferred him to the Abbe-ville City Police station for booking. The Department impounded Perrin’s mother’s vehicle incidental to the arrest.
At approximately 4:00 p.m. that afternoon, the Abbeville Police Department released Perrin on his own recognizance. Perrin departed the Abbeville Police Department and proceeded to walk to the impound yard where his mother’s vehicle was located. While in route, Perrin encountered another Abbeville police officer, Sgt. Eddie Connor, who was familiar with him and inquired as to his destination. Perrin requested that Sgt. Connor provide him transportation to the impound lot where he was to meet some of his relatives. Sgt. Connor radioed Officer David Todd Hebert who confirmed Perrin had been arrested, charged with DWI, and released on his own recognizance. During the radio conversation, Sgt. Connor was informed no “hold” had been placed on the vehicle which Perrin had been operating. Sgt. Connor in turn advised Perrin his driver’s license was suspended, he was still intoxicated, and he could not drive. Sgt. Connor then told Hebert: “someone was *693 coming to get Perrin at the impound yard.”
While in route to the impound yard, Sgt. Connor stated he again advised Perrin 1 ghe could not operate the vehicle. Sgt. Connor stated, before Perrin exited the vehicle, he told him: “[i]f I catch you driving, you’re going to be arrested again and charged on another offense.” According to Sgt. Con-nor, Perrin responded: “I’m not going to drive, I called some cousins from Erath; they’re going to meet me here ... and pick up the car.” Perrin, however, could not recall the nature of the conversation between he and Sgt. Connor, but acknowledges he may have told Sgt. Connor his relatives were picking him up.
Sgt. Connor dropped Perrin off at the impound lot’s owner’s house, which was adjacent to the impound lot. The lot was closed for Thanksgiving. Although Perrin had no money, he was able to obtain the keys to his mother’s car by leaving the title to the car with the impound lot attendant. Perrin left the lot at approximately 4:30 p.m. and returned to Lee’s Tavern in Erath. At Lee’s, Perrin consumed another dozen or so beers before leaving to “get more money.”
On his return trip to Lee’s Tavern, at approximately 5:30 p.m., Perrin lost control of his vehicle while driving approximately 95 miles per hour on La. Highway 339 between Lafayette and Erath striking the vehicle in which plaintiffs were passengers.
The trial court granted summary judgment and dismissed the suit against the City of Abbeville with prejudice. From this judgment, plaintiffs appeal arguing the trial court erred by applying the Public Duty Doctrine rather than La.R.S. 9:2798.1 in assessing the City of Abbe-ville’s tort liability for the acts and omissions of its police officers.

SUMMARY JUDGMENT

Appellate courts are required to review summary judgments de novo under the same criteria that governed the trial court’s consideration of whether or not summary judgment was appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979. With the recent amendments to La.Code Civ.P. art. 966, summary judgment is now favored. It is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, to gether with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under La.Code Civ.P. art. 966(C), once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Smith v. Our Lady of the Lake Hosp. Inc., 93-2512 (La.7/5/94); 639 So.2d 730.

ISSUES

The principle issues in this case are whether the City of Abbeville had a legal duty to ensure Roland Perrin did not operate a vehicle after his arrest for DWI, and subsequent release; and if so, whether a material factual dispute exists regarding the City’s breach of that duty.

*694
ASSIGNMENT OF ERROR

The plaintiffs argue the trial court erred by basing its decision on the Public Duty Doctrine, which essentially provides government entities an exemption from liability when its officers or employees breach a duty which is owed to the public in general. Fowler v. Roberts, 556 So.2d 1 (La.1989). Plaintiffs contend La.R.S. 9:2798.1, instead, governs the extent of the City’s liability in this case. We agree. The Louisiana Supreme Court clearly rejected the Public Duty Doctrine and its exceptions |4as controlling in this state. The court instructed either La.R.S. 9:2798.1 or the duty-risk analysis should apply in determining the liability for injury caused by public entities and their officers in the performance of their duties. Hardy v. Bowie, 98-2821 (La.9/8/99); 744 So.2d 606.
La.R.S. 9:2798.1 provides in pertinent part:
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
If the public entity is not immune from liability as provided in La.R.S. 9:2798.1, the courts must analyze the conduct under the duty risk analysis. Bowie, 744 So.2d 606; Fowler, 556 So.2d 1 (La.1989).

La.R.S. 9:2798.1(B)

The statute directs liability shall not be imposed on public entities or their officers or employees based upon the performance of their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties. La.R.S. 9:2798.1(B). In Bowie, the supreme court adopted the two-step test enunciated in Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) for determining whether the discretionary function exception applies in specific fact situations:
“[T]he discretionary function exception will not apply when a ... statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful I,.¡option but to adhere to the directive.” Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958. If the employee had no discretion or choice as to appropriate conduct, there is no immunity. When discretion is involved, the court must then determine whether that discretion is the kind which is shielded by the exception, that is one grounded in social, economic or political policy.
A police officer’s exercise of discretion is a major element in carrying out the broad scope of his duty to maintain peace and order, enforce the law, prevent crime, and protect the citizenry. One basic and essential goal in requiring Louisiana police officers to successfully complete a certified training program and pass a comprehensive examination is to better prepare these officers to properly perform the inherent discretionary function of the job.
Sgt. Connor testified he arrived at the police department at 4:00 p.m. on the day in question and came into contact with *695 Perrin outside the station. He stated Per-rin asked him for a ride to the impound yard. Sgt. Connor testified he accommodated Perrin’s request after he verified no “hold” had been placed on Perrin’s vehicle, and after twice instructing Perrin he was not to drive the vehicle himself. Sgt. Con-nor’s conduct in this situation was not governed by any specific statute, regulation, or departmental policy but rather was completely discretionary. We turn to consider whether his discretionary conduct was the kind which is shielded by the exception — that is one grounded in social, economic or political policy. Bowie, 744 So.2d 606.
The City relied on Persilver v. Louisiana, Dept. of Trans., 692 So.2d 1344, (La.App. 1 Cir.1991), which it contends articulate the social, economic or political policy considerations relevant in determining the appropriateness of Sgt. Connor’s conduct in handling Perrin. In Persilver, two Franklin police officers responded to a call from a manager at a local bar who reported one of the bar’s patrons was intoxicated and becoming a danger to himself and others. Persilver, 592 So.2d 1344. After arriving on the scene, the officers gave the patron’s car keys to a friend | firather than arresting him or driving him home. Shortly thereafter, the patron obtained his keys from the friend drove his vehicle through an unmarked curve on Louisiana Highway 87 near Franklin, flipping it several times. Id at 1346.
The court held the City’s police officers had no duty to anticipate the intoxicated patron would obtain his keys from his friend and attempt to drive his vehicle. The court also held the officers fulfilled their duty to prevent the patron from driving while intoxicated when they took his car keys and gave them to a friend. Id. The court reasoned to require police officers to either bring an intoxicated bar patron home or monitor his future conduct would make the public the insurer of intoxicated individuals and greatly burden police officers from fulfilling their other assigned duties. Id at 1347. This court also is unwilling to place such an onerous burden on the law enforcement community. We find Sgt. Connor’s conduct fell within the ambit of La.R.S. 9:2798.1(B).

La.R.S. 9:2798.1(C)

Nonetheless, Plaintiffs argue the City is not entitled to avail itself of the protection afforded in La.R.S. 9:2798.1(B) to public entities or their officers or employees because that provision does not apply to acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct, which are instead governed by the exception found in La.R.S. 92798.1(C). Initially, we note the City could not constitutionally detain Perrin after he posted bond or was released on his own recognizance. La. Const. art. I, § 18; La.Code Crim.P. art. 312 et seq. We surmise then, the plaintiffs must assign fault based on the officer’s failure to verify Perrin’s story or to anticipate Perrin returning to Lee’s Tavern to consume more alcohol. We agree, the officer certainly had a duty to prevent Perrin from driving while intoxicated. However, the record does not contain any evidence suggesting Sgt. Connor did not fulfill this duty by advising 17Perrin he could not drive in his intoxicated condition. Perrin admits Sgt. Connor may have twice advised him he would be re-arrested if he attempted to drive. He also admits he may have told Sgt. Connor family members were coming to pick him up at the impound yard. The officer had no duty to anticipate that Perrin would gain access to his vehicle, return to Lee’s Tavern, and later cause an accident while driving intoxicated. His conduct, thus, was not so *696 egregious as to fall within the exception provided in La.R.S. 9:2798.1(C).
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.
SAUNDERS, J., dissents.